628 P.2d 324

**Buford A. SMITH, Plaintiff-Appellee, and Cross-Appellant,**

v.

**TRAILWAYS BUS SYSTEM, Employer, and Transport Insurance Company, Insurer, Defendant-Appellant, and Cross-Appellee.**

No. 4809.

Court of Appeals of New Mexico.

March 31, 1981.

Alan Konrad, Miller, Stratvert, Torgerson & Brandt, P. A., Albuquerque, for plaintiff-appellee, and cross-appellant.

Richard J. Crollett, Roybal & Crollett, Albuquerque, for defendant-appellant, and cross-appellee.

## OPINION

WALTERS, Judge.

Plaintiff, a bus driver for defendant Trailways Bus System since April, 1965, sustained a work-connected injury to his lower back in January of 1974. A spinal fusion was performed in July of 1976, and a workmen's compensation claim related to the injury was settled in January of 1977. The settlement judgment provided for plaintiff to be paid "$4,000 for permanent partial disability ... prorated over 478 weeks at approximately $8.37 per week," and $3,000 for future medical, transportation, and rehabilitation expenses, in addition to an allowance for attorneys' fees.

Plaintiff returned to his work as a bus driver in December 1976.

On December 6, 1978, plaintiff's bus was bumped from behind and he sustained an injury to his neck. He filed a compensation claim in August, 1979, alleging permanent disability as a result of the accident and complaining that he had been receiving incorrect payments of $172.46 per week in compensation benefits for the eleven weeks he had been off the job.

After a trial on the merits, the trial court awarded 100% total temporary disability for the periods from December 6, 1978 to June 15, 1979, and from December 13, 1979 to January 3, 1980; 35% partial permanent disability for 25 weeks for the period from June 15, 1979 to December 12, 1979; 25% partial permanent disability from January 3, 1980 to continue for 561 weeks. Defendants were given credit for benefits paid by them during 1979 of $172.46 for fourteen weeks ($2,414.44), and for $3,163.86 still to be paid to plaintiff under the 1977 judgment. The court also awarded unpaid past and future medical expenses and $5,500 in attorneys' fees. It is from this judgment that defendants have appealed, contending error in the trial court's determination of permanent partial, temporary partial, and temporary total disability for varying periods; in its application of § 52–1–47 D, N.M. S.A.1978, in reducing benefits; in the inclusion of some costs incurred as necessary medical expenses, and in the amount of attorneys' fees awarded. Plaintiff cross-appeals the trial court's denial of certain expenses he contends were necessary to his medical treatment.

1. *The finding of permanent partial disability as a result of the 1978 accident.*

Appellants insist that no expert medical testimony established the December 6, 1978 bus accident, rather than the 1976 spinal fusion operation, as the cause of any permanent disability to the workman. They argue that conditions of § 52–1–28 B, N.M.S. A.1978, were not met. That statute provides:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility of the causal connection exists.

■ *See Renfro v. San Juan Hospital, Inc.,* 75 N.M. 235, 238, 403 P.2d 681 (1965). If the necessary medical evidence is produced, the degree of disability is a question of fact for the fact-finder; and if there is substantial evidence in the record to support a disability finding, it is binding on this court. *Adams v. Loffland Brothers Drilling Co.,* 82 N.M. 72, 74, 475 P.2d 466 (Ct.App. 1970).

■ Defendants' contention that the record does not reflect a causal connection as a medical probability by expert medical testimony is incorrect. The medical testimony was conflicting; nevertheless, Dr. Maron, plaintiff's orthopedic surgeon, gave evidence to support the finding that plaintiff's disability was a natural and direct result of the December 6, 1978 accident. The conflicts were resolved in plaintiff's favor. The trial court's finding on this issue will be upheld. *See Alvillar v. Hatfield,* 82 N.M. 565, 484 P.2d 1275 (Ct.App.1971).

2. *The finding of 35% partial temporary disability from June 15, 1979 to December 12, 1979, resulting from the 1978 bus accident.*

■ Plaintiff was released by Dr. Maron to return to work on June 15, 1979. At that time, plaintiff's driving route was changed from Albuquerque-El Paso to Albuquerque-Tucumcari, and he received an increase in pay. Appellants contend that, under *Anaya v. New Mexico Steel Erectors, Inc.,* 94 N.M. 370, 610 P.2d 1199 (1980), an increase in wage-earning capacity demonstrates the error in a finding of a 35% partial disability. It was noted in *Chavira v. Gaylord Broadcasting Co.,* N.M., 620 P.2d 1292 (Ct.App. 1980), cert. denied, N.M., 621 P.2d 516 (1980), that *Anaya*

inadvertently relied on case law interpreting the earlier disability statute, and overlooked *Quintana v. Trotz Const. Co.*, 79 N.M. 109, 440 P.2d 301 (1968), which pointed out that the 1963 amendment to Sections 59–10–12.18 and 59–10–12.19, N.M.S.A.1953 (now Sections 52–1–24 and 52–1–25, N.M.S.A.1978), "changed the primary test of disability from wage-earning ability to capacity to perform work as delineated in the statute."

The evidence reflects that plaintiff suffered an incapacity to perform some of his work. He experienced constant headaches, neck and backaches after returning to work in June. He encountered problems in bending and stooping to handle baggage, and he had to have assistance to do those tasks. He sought and obtained the Tucumcari route because it was shorter, and he could stand more often because there were more stops along the way. This constitutes substantial evidence to support the finding, and it will not be disturbed on appeal. *Adams, supra.*

Appellants next argue that because plaintiff returned to his job on June 15, 1979, and performed his usual duties while receiving his normal salary, he is not entitled to disability benefits for the period in question. However, as stated in *Quintana v. Trotz Const. Co.*, 79 N.M. 109, 111, 440 P.2d 301 (1968), and reiterated in *Chavira, supra*, the primary test of disability has been changed from wage-earning ability to capacity to perform work. Based on the evidence discussed above, the finding that plaintiff suffered a disability in his capacity to perform his work from June 15 to December 12, 1979 is not erroneous.

3. *The finding of temporary total disability from December 12, 1979 to January 3, 1980, as a result of the 1978 bus accident.*

■ There is also substantial evidence to support this finding. Dr. Maron referred plaintiff to Dr. Mladinich on December 12, 1979 for an examination of his neck area. Dr. Mladinich diagnosed cervical and thoracic sprain. He recommended that plaintiff take time off work, and he started plaintiff on a daily physical therapy treatment program which continued through January 3, 1980. Plaintiff was then medically released to return to work. According to Dr. Mladinich, the sprain was of a temporary nature and he did not expect plaintiff to suffer any permanent physical impairment.

As was said in *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 506, 590 P.2d 652 (Ct.App. 1979):

"[T]emporary disability" is that which lasts for a limited time only while the workman is undergoing treatment. This classification anticipates that eventually there will be either complete recovery or an impaired bodily condition which is static.

The facts presented in this case satisfy the "temporary disability" definition of *Lane, supra*; and the medical evidence supports the totality of the disability during that three-week period.

4. *The manner of applying § 52–1–47 D, N.M.S.A.1978.*

■ This subsection of the statute limiting compensation benefits provides:

D. the compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the workman if compensation benefits in both instances are for injury to the same member or function or different parts of the same member or function, or for disfigurement, and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

Plaintiffs' settlement judgment of 1977, prorating $4,000 for permanent partial disability over 478 weeks at $8.37 per week, contemplated coverage through March of 1986. After the December 1978 injury, defendants voluntarily paid him fourteen weeks of compensation for temporary total disability, He was awarded in this suit 35%

partial permanent disability payments for twenty-five weeks from June 15, 1979 to December 12, 1979, and 25% partial permanent disability from January 3, 1980 to continue for the remaining 561 weeks of the statutory entitlement period. Defendants argue this a duplication of benefits in violation of § 52–1–47 D, *supra*, because plaintiff will receive payments pursuant to the 1977 judgment for a 20–25% impairment, while at the same time the present judgment grants him benefits for the same impairment. They assert there is no finding that the December 6, 1978 accident resulted in any additional permanent impairment or disability.

We do not agree with defendants' formulation of this issue because among the trial court's findings are the following:

23. From June 15, 1979, to December 12 1979, because of injuries sustained in the accident of December 6, 1978, Plaintiff was partially disabled to the extent of 35% of the body as a whole to perform the duties required of a bus driver on a sustaining basis or any other employment for which he was qualified by education and experience.

24. From January 3, 1980, to date of trial and at time of trial, because of injuries to the low back or aggravation to prior injury to the low back sustained in the accident of December 6, 1978, Plaintiff was partially disabled to the extent of 25% of the body as a whole to perform the duties required of a bus driver on a sustaining basis or any other employment for which he was qualified by education and experience.

The quoted findings establish that plaintiff suffered new or aggravated injuries, together with additional disabilities, as a result of the December 6, 1978 accident.

To comply with the requirements of § 52–1–47 D, the trial court provided in its judgment that

the Defendants shall be given credit for compensation benefits in the amount of $3,163.86 previously paid to the Plaintiff as workmen's compensation benefits in a prior lawsuit styled, "Bernalillo County Cause No. 8–76–03531"; * * * *

Finding No. 25 explained that the $3,163.86 figure was computed by multiplying 378 weeks of compensation paid after December 6, 1978 and still to be paid under the 1977 judgment, by $8.37 per week. That amount was then deducted from the total amount awarded in the instant suit. We said in *Gurule v. Albuquerque-Bernalillo County Econ. Opp. Bd.*, 84 N.M. 196, 203, 500 P.2d 1319 (Ct.App.1972), cert. denied, 84 N.M. 180, 500 P.2d 1303 (1972):

Section 59–10–18.8(D) [sic], supra, [now § 52–1–47 D] does not state that a workman may not receive compensation benefits for successive injuries. It does state that when there are successive injuries to the same member or function, benefits for the subsequent injury may not duplicate benefits paid or payable for the prior injury. It is the overlap in benefits to which the reduction applies.

By reducing the 1980 award by an amount equal to value of the 1977 judgment remaining after December 6, 1978, the court eliminated the overlap. Its manner of applying the statute was completely proper.

5. *The expenses of California doctors and hospitalization.*

■ Section 52–1–49, N.M.S.A.1978, requires the employer to furnish all reasonable and necessary medical expenses incurred by the workman for a job-related injury. The trial court found the expenses incurred by plaintiff in California were reasonable and necessary, and resulted from the December 6, 1978 accident. We sustain this finding on appeal; it is supported by substantial evidence from Dr. Maron that he referred plaintiff to Dr. Wiltse, who hospitalized plaintiff for evaluation and treatment and, in turn, referred plaintiff to Dr. Severance. Thereafter, Dr. Maron relied on Dr. Wiltse's findings for further diagnosis and treatment of plaintiff. There was no error in assessing those costs in plaintiffs' favor.

6. *The award of $5,500 in attorneys' fees.*

All parties agree that, in awarding attorney's fees, there was no compliance with *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718

(1979), *Johnsen v. Fryar*, 19 N.M.S.B.B. 1024, No. 4477, (Ct.App., Nov. 6, 1980), and *Fitch v. Tanksley Trucking Co.*, N.M., 623 P.2d 991 (Ct.App.1980). This issue therefore must be remanded to the trial court for entry of findings and conclusions on the reasonable amount of attorneys' fees to be awarded.

### 7. *The cross-appeal.*

█ Plaintiff's treating orthopedist referred plaintiff to a leading orthopedic surgeon in California because he felt plaintiff "had exhausted whatever was available here in Albuquerque." The trial court denied reimbursement for one or two nights' lodging, two meals, and air transportation to California and return.

Plaintiff's entitlement to reimbursement for expenses incident to medical treatment under the New Mexico statute, § 52–1–49 N.M.S.A.1978, is a question raised but not answered in *Hales v. Van Cleave*, 78 N.M. 181, 429 P.2d 379 (Ct.App.1967). We do not believe, however, that it is an issue necessary to decide in this case, either. Plaintiff attended a two-day union meeting when he arrived in California, and he stayed at a motel near the union meeting place the first night. The expense of two meals were incurred at that time. During the rest of his stay in California, while not hospitalized, he stayed with his brother. The evidence shows further that plaintiff could have travelled to California by bus, without charge, if he had wished. Under these circumstances, plaintiff failed to prove that the expenses disallowed by the Court were reasonable and necessarily incurred as a part of his medical treatment, and the trial court's ruling on that matter was not erroneous.

We affirm the judgment on all issues except the award of attorney fees, and that matter is remanded to the trial court for proceedings thereon. Plaintiff is awarded $2,750.00 for services of his attorney in this appeal.

IT IS SO ORDERED.

HERNANDEZ, C. J., and WOOD, J., concur.