689 P.2d 289

**Mark PATERNOSTER, Plaintiff-Appellant/Cross-Appellee,**

v.

**LA CUESTA CABINETS, INC., Employer, and Rockwood Insurance Company, Insurer, Defendants-Appellees/Cross-Appellants.**

**Nos. 7535, 7548.**

Court of Appeals of New Mexico.

Sept. 25, 1984.

Dennis P. Murphy, David P. Garcia, Montoya, Murphy, Kauffman & Garcia, Santa Fe, for plaintiff-appellant/cross-appellee.

Howard R. Thomas, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendants-appellees/cross-appellants.

## OPINION

ALARID, Judge.

### FACTS:

Plaintiff-Appellant/Cross-Appellee Mark Paternoster (plaintiff) sustained an accidental injury to his left hand while operating a table saw in the cabinet shop of Defendant-Appellee/Cross-Appellant La Cuesta Cabinets, Inc. (La Cuesta). Insurer, Defendant-Appellee/Cross-Appellant Rockwood Insurance Company (Rockwood) (collectively, defendants), timely paid plaintiff compensation benefits at the rate of $133.34 per week from September 11, 1980 to October 12, 1983, past the time of trial. The trial court determined that the healing period lasted from September 10, 1980 to May 9, 1982. On May 10, 1982, Rockwood unilaterally deemed future payments to be scheduled member benefits rather than temporary disability payments. However, the compensation rate paid remained at $133.34. The trial court determined that plaintiff had an 80% loss of the use of his left hand due to the accidental injury. Additionally, it found that plaintiff had developed a post-traumatic stress syndrome, a separate and distinct injury to his body as a whole. Also, the trial court found that La Cuesta failed to provide recognized safety devices.

The trial court concluded that after May 9, 1982 plaintiff was 20% disabled and, together with the 10% safety device penalty, was only entitled to receive $29.33, which is 22% of $133.34. The court then discussed a credit which was to be given in its judgment:

2. Plaintiff is awarded weekly benefits at the rate of Twenty Nine Dollars and Thirty Three Cents ($29.33) per week from May 9, 1982 until further order of the Court for a period not to exceed six

hundred (600) weeks from September 10, 1980 subject to the following credits:

a) Defendants are awarded credit for total temporary disability payments paid from September 10, 1980 to May 9, 1982 for eighty six (86) weeks and four (4) days.

b) Defendants are awarded a credit for seventy four (74) weeks compensation benefits in the amount of Twenty Nine Dollars and Thirty Three Cents ($29.33) per week paid to Plaintiff on May 10, 1982 to October 12, 1983.

c) Defendants are awarded a credit against future weekly compensation benefits which may be payable to Plaintiff in the amount of Seven Thousand Six Hundred Ninety Six Dollars and Seventy Four Cents ($7,696.74) as the overpayment made by Defendants to Plaintiff from May 10, 1982 to October 12, 1983.

Both plaintiff and defendants interpret the judgment to mean that plaintiff will not receive any weekly benefits until $7,696.74 worth of credits have accrued to repay defendants for their prejudgment overpayments. According to the plaintiff, he has received no benefits since October 12, 1983, and, by the terms of the judgment, if he remains disabled to the extent of 20%, he will receive no weekly benefits for a period of more than five years.

■ While it is not clear from the judgment that the credit is to be applied in the manner assumed by the parties, it is clear that the court granted some form of credit for the overpayment made between May 10, 1982 and October 12, 1983. On appeal, plaintiff raises an issue of first impression: whether an employer or his insurer (employer) are entitled to a credit against the amount of worker's compensation benefits ordered by the court for overpayment of compensation benefits prior to judgment; and, if so, whether the credit should be applied on a dollar-for-dollar basis or on another basis. We hold that an employer is entitled to a credit for overpayments made in good faith by mistake. Notwithstanding our conclusion that a credit is

available, we reject the credit awarded below, which resulted in the immediate termination of post-judgment benefits, and remand for determination of a credit in accordance with the guidelines discussed in this opinion.

On cross-appeal, La Cuesta and Rockwood raise three issues. They argue: (1) that the case should have been dismissed for premature filing; (2) that the trial court's award of attorney fees was improper; and (3) that costs were awarded without proper notice to defendants pursuant to NMSA 1978, Civ.P. Rule 54(d) (Repl.Pamp. 1980). We affirm the trial court on all of these issues.

**DISCUSSION**

### I. *Credit for Overpayment*

■ We note at the outset that New Mexico does not provide a statutory section in the Workmen's Compensation Act (Act), NMSA 1978, Sections 52–1–1 to –69 (Orig. Pamp. and Cum.Supp.1984), which deals with the question of overpayment of prejudgment compensation benefits. While we normally would look to the Act for the rights, remedies, and procedures to be applied in any given case, *Security Insurance Co. of Hartford v. Chapman*, 88 N.M. 292, 540 P.2d 222 (1975), we are provided no direction with regard to the availability of overpayment credit. However, where no guidance is given, "fundamental fairness" must be our guideline. *Transport Indemnity Co. v. Garcia*, 89 N.M. 342, 552 P.2d 473 (Ct.App.1976).

Other jurisdictions do make available a credit for prejudgment overpayments. One approach, by statute, is to provide a dollar-for-dollar credit against future disability payments under circumstances similar to the present case. *Belam Florida Corp. v. Dardy*, 397 So.2d 756 (Fla.App. 1981). Another approach, under statutory authorization, has mandated that dollar-for-dollar credit is not to be applied to reduce the amount of the periodic payments. Instead, dollar-for-dollar credit is applied to reduce the period for which compensation is due and still maintain the periodic level

of payment. *Dodgen v. St. Paul Fire & Marine Insurance Co.*, 138 Ga.App. 499, 227 S.E.2d 64 (1976) (decided under pre-1978 statute); *Jacks v. Banister Pipelines America*, 418 So.2d 524 (La.1982) (decided under pre-1983 statute).

Some jurisdictions, even in the absence of statutory authority, provide a dollar-for-dollar credit against future disability payments for earlier overpayments in benefits. *Wilson Food Corp. v. Cherry*, 315 N.W.2d 756 (Iowa 1982); *Hudson v. Kaiser Steel Corp.*, 662 P.2d 29 (Utah 1983). In *Cherry*, such a credit resulted in a reduction of the compensation period. In *Hudson*, the credit resulted in the termination of all future periodic payments because the large overpayment actually exceeded the amount of future compensation due under the award.

Perhaps the clearest rationale for the application of credit is found in *Western Casualty & Surety Co. v. Adkins*, 619 S.W.2d 502, 503–04 (Ky.App.1981), where the Kentucky Court of Appeals concluded:

In our view, the voluntary payment of compensation benefits during the pendency of [compensation] proceedings ... is a matter of great importance to an injured worker and should not be discouraged. Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by his employers and would therefore constitute a disservice to injured workers generally.

Underlying all these cases is the recognition that a substantial benefit accrues to an employee where the employer makes prejudgment payments under the good faith belief that he (the employer) is discharging his obligation under workmen's compensation law. We agree with the policy of encouraging voluntary, prejudgment payments. The employer, in so making these payments, furthers the prime goal of the Act, which is to protect an employee against want, and to prevent an employee from becoming a public charge. *Boughton v. Western Nuclear, Inc.*, 99 N.M. 723, 663

P.2d 382 (Ct.App.1983). Using "fundamental fairness" as our guideline, therefore, we believe it equitable to acknowledge, in some fashion, the employer's prejudgment payment contribution. We conclude that a credit is appropriate for overpayments made under the employer's good faith belief that he is discharging his statutory obligation. In so concluding, we presuppose that the prejudgment overpayments are intended by the employer to be compensation payments, and not a mere gratuity. If, from the circumstances of the individual case, it is found that an employer intended to offer a gratuity to the employee, obviously no credit would then be forthcoming. *See Roybal v. County of Santa Fe*, 79 N.M. 99, 440 P.2d 291 (1968).

Our next concern involves the manner in which the credit is to be applied. The trial court, in ordering the credit, found *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981), controlling. We disagree that *Smith* is dispositive of the issue. *Smith* dealt with the application of Section 52–1–47(D) of the Act, which addresses the limitation on benefits for successive injuries to the same member, or function. The court, relying on *Gurule v. Albuquerque-Bernalillo County Economic Opportunity Board*, 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972), interpreted the statute to prohibit benefits for a subsequent injury where those benefits would duplicate benefits for a prior injury to the same member or function. The court then affirmed the trial court's reduction of a 1980 benefits award by the amount of a previous award covering the same period of weeks. *Smith*, 96 N.M. at 83, 628 P.2d 324. Credit was not granted for an employer's voluntary overpayment of prejudgment benefits. There was no overpayment issue involved in *Smith* upon which the court focused. The court merely affirmed a modification of a subsequent award designed to eliminate the overlap in benefits between the subsequent award and a prior award.

We assume, as the parties have assumed, that the trial court interpreted *Smith* as

applying a dollar-for-dollar credit against future payments, with the result that no benefits would be available to plaintiff until the overpayment is recaptured. However, this is an erroneous interpretation of the application of credit in *Smith*. In fact, the trial court in *Smith* actually computed the potential value of the subsequent award based on the number of weeks of available benefits, and then proceeded to reduce that value by the amount still to be paid under the prior judgment. *Id.* The effect was to prorate the duplicate amount of the prior judgment over the remaining number of weeks under the subsequent award. This proration served to reduce the weekly periodic payments; but it did not serve to terminate payments as does the application of credit in the present case.

■■■ Unless the overpayment equals or exceeds the value of the compensation award, a situation which is not before us and as to which we explicitly reserve judgment, an award of credit should be fashioned to avoid immediate termination of benefits because such termination violates the central scheme of the Act. In order to achieve the goal of protecting an employee against want, and preventing his dependence on the public rolls, *Boughton v. Western Nuclear, Inc.*, the Act creates a scheme whereby an injured worker who is partially disabled shall be entitled to receive periodic compensation benefits for a period of up to 600 weeks, for as long as he remains disabled. Section 52–1–42. The Act orders that disability payments be made by employers at regular intervals during the continuance of the disability. Section 52–1–38(A). Furthermore, such payments are to be made in an installment form, with the first installment to be paid not later than thirty-one days after the occurrence of the disability, and remaining installments to be paid twice a month at intervals not more than sixteen days apart. Section 52–1–30(A). Awards of a lump sum payment, which discharges an employer's liability for compensation, are considered the exception under the Act, rather than the rule. Section 52–1–30(B); *Arther v. Western Co. of North America*, 88 N.M.

157, 538 P.2d 799 (Ct.App.1975). We have judicially recognized that this scheme of periodic, regular payment serves the best interest of the employee because the payments "supply, in a measure, the loss of a regular pay check." *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 215, 549 P.2d 628, 630 (Ct.App.1976).

■■ Under the present credit scheme we are confronted with the reality that, despite his disability, plaintiff will not receive periodic benefits until over five years have elapsed from the date of judgment. Clearly, this application of credit does not conform to the scheme of the Act, where payments are to be coextensive with disability. Any immediate termination of benefits during a period of disability is, likewise, violative of the Act.

We are not alone in our proscription of this type of credit. The Supreme Court of Kansas similarly rejects any credit procedure where an employer's overpayments are deducted from future payments due an employee. *Johnson v. Tony's Pizza Service*, 232 Kan. 848, 658 P.2d 1047 (1983). Kansas provides a special reimbursement fund for employers who have overpaid prior to judgment. The administrators of the fund contended in *Johnston* that they were not liable to the employers under the circumstances of that case, and argued that the proper remedy for the employers was a deduction from future disability payments. The court rejected this approach with the following reasoning:

> Claimant Donna Pruyn's award of $77.28 a week was reduced by the district court to $12.88 per week for 387.13 weeks with the total overpayment being $1,159.20. Therefore, 81 weeks would have to elapse before Ms. Pruyn could receive another check if this method [deductions from future payments] of reimbursement were utilized. Did the Legislature intend to leave it to the employer and insurance carrier to decide whether to repay themselves *immediately*, at the end of the payment period, or by deduction of a percentage each week? Such an intent

would be highly unlikely and out of keeping with the philosophy of workers' compensation.

232 Kan. at 850–51, 658 P.2d at 1049 (emphasis added).

██ Because we disallow the form of credit applied in this case, we must decide what constitutes an appropriate form of credit so as to give meaning to our holding. We do not, however, decide on one exclusive form of credit, but rather authorize the trial court to make a choice from one of several acceptable schemes, dependent upon the circumstances of each case. First, a credit which serves to shorten the compensation period while providing for immediate post-judgment payments of disability is, in our view, one acceptable credit. *See Dodgen v. St. Paul Fire & Marine; Jacks v. Banister Pipelines America.* Under this credit, the amount of overpayment would be deducted from the total value of the award. Payments would commence immediately after judgment but, because of the reduction, would run over a shorter number of weeks. We have no doubt that a worker could, in fact, be seriously inconvenienced by such a shortening of the maximum number of weeks. However, we see this approach as a possible equitable balance between the goals of the Act relating to compensation, and our recognition that "fundamental fairness" must be employed on the issue of overpayment. By not immediately terminating post-judgment benefits, we adhere to the policies of the Act. By shortening the compensation period, we provide for a credit.

Second, a credit applied under *Smith* is also an acceptable credit, provided, however, that no significant reduction occurs in the amount of each payment. Such a reduction would undermine the specific goal of the Act to supply the loss of a regular pay check. *Codling v. Aztec Well Servicing Co.* We are aware that "significant reduction" is an imprecise term. However, we know of no other way of formulating a general rule as to credit. We leave the determination of what constitutes "significant reduction" to the trial court, to be applied under the circumstances of each individual case.

In addition to these forms of dollar-for-dollar credit, a credit is also available based upon the number of weeks for which the overpayments are made. This credit represents another way of shortening the compensation period. We note that, in its judgment, the trial court already provided defendants with a credit of seventy-four weeks for prejudgment payments in the amount of $29.33. These weeks are to be deducted from the maximum period of 600 weeks. *See* § 52–1–42. We recognize also that other jurisdictions provide credit for prejudgment disability payments, based upon the number of weeks such payments are made. *Humpty Dumpty v. Moorehead,* 569 P.2d 998 (Okl.1977). We see no reason why the overpayment may not be credited in this fashion. The overpayments are, in essence, equivalent to prejudgment disability payments for which credit on the week-by-week basis is already given. Therefore, in the present case, this method would reduce the compensation period by an additional seventy-four weeks beyond that credit already specified in the judgment. While a dollar-for-dollar recovery is not realized under this method, it is, nevertheless, an option where a dollar-for-dollar credit would effectively undermine the goal of providing the employee with a periodic amount during the period of disability.

To summarize, although we disallow the credit awarded on the facts of this case, we hold that the trial court has discretion to make an award of credit which balances the compensation goals of the Act against the principle of fundamental fairness toward the employer. The trial judge must take into account the following factors: (1) the circumstances under which overpayment occurred, and (2) the impact of a dollar-for-dollar credit on the value of periodic payments awarded to the worker.

If an employer intended overpayments to represent a gratuity, no credit is available. If an employer for some reason acted in bad faith in making the overpayments, no credit is available. If the employer did not

act gratuitously, nor in bad faith, and if a dollar-for-dollar credit would not undermine the compensation goals of the Act, then the trial court should order such a credit. If, however, a dollar-for-dollar credit is inappropriate on such a basis, then the trial court may order a week-for-week credit.

## II. *Premature Filing*

Defendants claim that the case should have been dismissed as having been prematurely filed. Section 52–1–69 provides:

> No claim shall be filed by any workman who is receiving maximum compensation benefits; provided, however, a workman claiming additional compensation benefits, because of his employer's alleged failure to provide a safety device, may file suit therefor, but in such event only the safety device issue may be determined therein.

Defendants contend that, since plaintiff was receiving maximum compensation benefits, the case was prematurely filed by plaintiff for any claim other than the safety device issue. Defendants' pretrial motion on this ground was denied. The trial court denied the motion to dismiss for premature filing for the following reason:

> The basis for payments to date is scheduled injury and because I am of the opinion that this is not a scheduled injury case, I find that the Plaintiff stood a risk of letting the statute of limitations run before the scheduled injury benefits terminated[;] the case was not prematurely filed.

The trial court was correct in its ruling. After May 9, 1982, Rockwood notified plaintiff that future payments would be made as scheduled injury benefits for a 60% disability for loss of use of the non-dextrous hand. However, rather than paying benefits as required by the statute, Section 52–1–43, which would have been $80.00 per week for a period of 110 weeks (60% of plaintiff's maximum weekly benefits), Rockwood paid $133.34 per week (maximum weekly benefits) for a period of sixty-six weeks. Sixty-six weeks is 60% of the 110 weeks provided for in Section 52–1–

43(A). Apparently, $133.34 would be the maximum benefit available to plaintiff under total disability. In other words, instead of paying plaintiff 60% compensation for the required number of weeks under the statute, Rockwood paid the maximum benefits for 60% of the weeks required by the statute. Defendants argue that, since maximum weekly benefits available for total disability were being paid, the action filed by plaintiff was premature under Section 52–1–69.

Because of Rockwood's method of paying compensation, plaintiff claims he was left with the following two choices:

1. Do I wait until the end of sixty-six (66) weeks to assert my claim for benefits exceeding 60% disability to the hand under the Scheduled Injury Section and then be faced with the claim that the Statute of Limitations bars my claim for benefits?

2. Do I file my claim for benefits in excess of the 60% Scheduled Injury benefits to the hand and be faced with the claim that my lawsuit is premature?

Plaintiff chose the latter course.

■ Maximum compensation benefits, as used in Section 52–1–69, refers to maximum compensation benefit payments for disability. *Minnerup v. Stewart Brothers Drilling Co.*, 93 N.M. 561, 603 P.2d 300 (Ct.App.1979); *Rollins v. Albuquerque Public Schools*, 92 N.M. 795, 595 P.2d 765 (Ct.App.1979). It is clear that compensation benefits for 60% disability for loss of use of a scheduled member are not maximum compensation benefits under the statute. Furthermore, at the commencement of this scheduled member payment period, Rockwood declined to make benefit payments for a separate and distinct psychiatric impairment. Plaintiff then promptly filed his complaint, knowing at the time that he had sustained a psychiatric impairment. He sought disability benefits in excess of the 60% scheduled injury benefits which Rockwood intended to pay.

■ We will not sustain defendants' claim that they were paying maximum compensation benefits when Rockwood, in fact, was denying benefits for psychiatric impairment and paying scheduled member benefits based on a 60% disability. We see this action as amounting to a refusal to compensate for more than a scheduled injury. Such refusal commences the statute of limitations from the date of notice that other benefits will not be paid. *Gonzales v. Gackle Drilling Co.,* 67 N.M. 130, 353 P.2d 353 (1960). Plaintiff did not prematurely file his claim because the refusal required the filing of the claim to prevent the running of the statute. *Id.* The trial court is affirmed on this issue.

### III. *Attorney Fees*

Defendants challenge the trial court's award of attorney fees on three grounds: First, they allege that the trial court abused its discretion in awarding attorney fees to plaintiff because (a) compensation benefits were not refused and, therefore, he is not entitled to attorney fees, (b) the award of attorney fees is grossly disproportionate with the amount of compensation awarded, and (c) plaintiff did not collect compensation in excess of the amounts offered by defendants prior to the filing of the lawsuit; second, defendants argue that the trial court erred in failing to consider the present value of the award and the amount of attorney fees normally charged; and third, that the trial court failed to consider the conduct of plaintiff's attorneys in refusing to engage in good faith settlement negotiations.

■ The amount of attorney fees awarded in a case are within the discretion of the trial court, and the trial court should be affirmed unless it acted beyond reason. *Bufalino v. Safeway Stores, Inc.,* 98 N.M. 560, 650 P.2d 844 (Ct.App.1982). Judicial discretion is an equitable determination of what is just and proper under the circumstances; judicial discretion is abused when the action taken is arbitrary and capricious. *Alber v. Nolle,* 98 N.M. 100, 645 P.2d 456 (Ct.App.1982). An abuse of discretion occurs when the court acts in an arbitrary and capricious manner. *State v. Madrigal,* 85 N.M. 496, 513 P.2d 1278 (Ct.App.1973). An abuse of discretion is an act of the court exceeding the bound of reason. *Wirth v. Commercial Resources, Inc.,* 96 N.M. 340, 630 P.2d 292 (Ct.App.1981).

■ After the trial in this case, a supplemental hearing was held September 9, 1983 in which the court heard evidence on the issue of attorney fees and argument on issues regarding payment of deposition costs and the defendants' claim for credit for overpayment. The matter of plaintiff's claim for attorney fees was submitted to the court upon deposition, affidavits and testimony from two attorneys. The trial judge entered a letter opinion dated October 4, 1983 in which he stated:

> I have reviewed the file, including *all depositions,* and affidavits and the testimony of Mr. O'Friel and the deposition of Judge Franchini. Taking all of this into account, plus my own observations and experience on the bench, and applying the standards of *Fryar v. Johnsen,* I will award $14,000.00, plus gross receipt tax as attorney's fees. [Emphasis in original.]

Plaintiff and defendants then submitted requested findings of fact and conclusions of law on the issue of attorney fees, and the trial court entered its findings of fact and conclusions of law which carefully set forth the basis for the court's opinion on this issue.

The trial court stated that all depositions were reviewed in connection with its determination on this issue. The depositions of ten witnesses were taken in connection with this case. The trial of the case took two days, plus a further hearing and supplemental deposition subsequent to trial on the merits. The trial court found that plaintiff's attorneys had expended 325 hours in preparation and trial time, and the court's findings of fact show that the court had a substantial evidentiary basis for making its determination and carefully considered and evaluated the various factors required to be considered in making an

award of attorney fees in worker's compensation cases under *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979). The trial court did not abuse its discretion and, therefore, defendants' Points II(B) and (C) (as listed in defendants' brief-in-chief) are without merit since the record indicates a careful consideration of these issues by the trial court.

Defendants' contention, furthermore, that plaintiff's compensation benefits were not refused has been answered under our discussion of premature filing. We concluded that, in effect, there was a refusal to pay all benefits to which the plaintiff was entitled. Defendants' contention is without merit.

■ As for defendants' argument that the trial court erred in not considering the amount of fees normally charged in the community, it should be noted that defendants did not request a finding of fact on this issue. This failure to request a finding precludes a review of the claim of error on appeal. *Lopez v. K.B. Kennedy Engineering Co.*, 95 N.M. 507, 623 P.2d 1021 (Ct. App.1981).

■ As for defendants' argument that the trial court erred in not making a specific finding and conclusion as to the present value of the award, for which a finding was requested, it has been held that the trial court is not required to make a finding of fact on each factor set forth for attorney fee determination under *Fryar v. Johnsen. Salazar v. Pioneer Paving, Inc.*, 99 N.M. 744, 663 P.2d 1201 (Ct.App.1983). The requirement is that there be some evidence that the factors were considered by the trial court. *Id.* In the case at bar, the court's findings and conclusions make it clear that the court was aware of the nature and extent of benefits awarded and took these factors into consideration. Defendants' argument on this point is likewise without merit.

Defendants finally assert that the trial court erred in failing to consider the alleged failure of plaintiff's attorneys to engage in good faith settlement negotiations. The only authority cited by defendants in support of this bold assertion is a case which generally extolls the virtue of settlement versus litigation. *See, e.g., Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.1982). The authority cited is insufficient and, again, the record in this case documents a thorough and well-reasoned evaluation of all relevant factors by the trial court in determining the award of attorney fees. We affirm the trial court on this issue.

**Notice of Costs Award**

■ Point V of defendants' brief-in-chief asserts that the trial court erred in making an award of costs without notice to defendants pursuant to Civ.P. Rule 54(d). Rule 54(d) requires one day's notice. However, Rule 54(d) by its own terms does not apply when a statute expressly provides for an award of costs. The Act provides for costs under Section 52–1–35. No notice is required. Defendants' issue is without merit.

The trial court is reversed on the issue of the credit awarded to defendants, and the cause is remanded to the district court with instructions to fashion a credit consistent with the guidelines expressed in this opinion. The trial court is affirmed with regard to all other issues raised by defendants.

Plaintiff is awarded $2,500.00 plus gross receipts tax for attorney fees on appeal. Defendants shall bear the costs on appeal. Reversed in part and affirmed in part.

**IT IS SO ORDERED.**

DONNELLY, C.J., and MINZNER, J., concur.