708 P.2d 312

Kenneth G. JARAMILLO, Petitioner,

v.

**KAUFMAN PLUMBING & HEATING COMPANY INC., Employer, and United States Fidelity and Guaranty Company, Insurer, Respondents.**

No. 16025.

Supreme Court of New Mexico.

Oct. 10, 1985.

Alonzo J. Padilla, Albuquerque, for petitioner.

Robert H. Clark, Keleher & McLeod, P.A., Albuquerque, for respondents.

**OPINION**

WALTERS, Justice.

We granted certiorari on this matter only to review the basis for the Court of Appeals' decision regarding reimbursement of compensation paid after the workman's disability has ended.

 Repeal of a statute by implication is disfavored. We affirm the decision of the Court of Appeals but, with regard to reimbursement, we adopt Judge Bivins's special concurrence.

IT IS SO ORDERED.

FEDERICI, C.J., SOSA, Senior Justice, and RIORDAN and STOWERS, JJ., concur.

### APPENDIX

Nos. 7996, 8003.

Court of Appeals of New Mexico.

July 16, 1985.

### OPINION

DONNELLY, Chief Judge.

Both plaintiff and defendants appeal from a judgment modifying a prior workmen's compensation award of total and permanent disability. We discuss: (1) whether substantial evidence supports the trial court's finding that plaintiff's disability had partially diminished; (2) whether defendants were entitled to reimbursement for total disability benefits paid after plaintiff obtained other employment; and (3) denial of an award of attorney's fees. We affirm in part and reverse in part.

Plaintiff was injured on May 29, 1979, while employed as a carpenter for defendant, Kaufman Plumbing and Heating Company. While jumping from a scaffold, plaintiff hit his head and fell. As a result of the injury, plaintiff experienced neck pain, headaches and dizziness, pain in his right shoulder and arm, accompanying numbness in his right arm, and lower back pain. In September 1980, the trial court entered a judgment finding plaintiff was totally and permanently disabled and awarded him weekly benefits of $186.38, not to exceed a total of six hundred weeks.

Prior to his accident, plaintiff had previously worked as a sheriff's deputy for Sandoval County and as a reserve sheriff's officer for Bernalillo County. Because of this background, plaintiff decided in the course of rehabilitation counseling to seek admission to the New Mexico Law Enforcement Academy (Academy). In March 1981, less than six months following the judgment awarding him total disability benefits, plaintiff was physically examined in connection with his application to the Academy. As part of the exam, plaintiff filled out a checklist, indicating that he was *not* suffering headaches, dizziness or back pain, but also indicating that he had received workmen's compensation benefits for a neck and back injury. At the time of the examination on March 10, 1981, plaintiff reported that he was experiencing "no difficulty now."

Plaintiff was admitted to the Academy and attended a six-week course in the summer of 1981. He graduated sixth in a class of 28. Frank A. Mulholland, deputy director of the Academy, testified that plaintiff's test performance scores were "near perfect". Plaintiff's transcript from the Academy showed that he scored a grade of 100 on the physical agility component of the program which, according to Mulholland, involved running after a suspect to make an arrest, climbing a chain link fence, crawling and climbing through an open window, dragging heavy weights and climbing stairs. Plaintiff testified that although he had difficulty performing these physical requirements, he never complained to Academy personnel for fear of being rejected from the program.

After graduating from the Academy, plaintiff applied for a position as a policeman with the Rio Rancho Police Department. In his employment application, plaintiff acknowledged having suffered a back injury, but denied having any current physical defects. As part of the application process, plaintiff was required to submit to a comprehensive physical examination. The medical report indicated that plaintiff denied having ever had a "serious" accident or illness, back trouble, frequent headaches or dizzy spells. Dr. Roy Kropinak, who conducted the physical examination of plaintiff incident to his job application, noted that plaintiff was in "excellent health—both physical and mental," and testified at the hearing that in his opinion plaintiff was not disabled.

Plaintiff was employed as a Rio Rancho police officer, effective October 22, 1981, and served in that capacity until June 7, 1982, when he was terminated from employment. Rio Rancho Police Chief, Dencil

Haycox, testified that plaintiff was dismissed for reasons of "job performance" not related to any type of physical disability.

Defendants learned of plaintiff's full-time employment with the Rio Rancho police department and on February 15, 1983, filed a motion in the workmen's compensation action to reduce or terminate plaintiff's disability benefits. One month later, and prior to any hearing on the pending motion, defendants stopped making any additional payments to plaintiff. Defendants sought and obtained a setting on their motion for April 28, 1983. The motion hearing was rescheduled for May 16, 1983. The May 16, 1983 hearing was vacated at the request of plaintiff's attorney, who was in the process of withdrawing as counsel. For reasons not explained at trial, a hearing on defendants' motion was delayed until March 2, 1984. During this time, plaintiff received no disability payments.

Following hearing, the trial court determined that the benefits had been terminated without court order, and that the plaintiff was entitled to recover total disability benefits in the amount of $9,691.76, withheld by defendants from March 15, 1983 up through the date of the hearing on the motion. The court also concluded that the plaintiff's disability had diminished to 15 percent (permanent partial) as of the date of hearing, and ordered a prospective reduction in the payment of future compensation benefits. No attorneys fees were awarded plaintiff.

## I. SUBSTANTIAL EVIDENCE

On appeal, both the plaintiff and the defendants challenge the trial court's finding that plaintiff is 15 percent permanently partially disabled. Defendants argue that the plaintiff's disability ended when he returned to full-time employment as a police officer on October 22, 1981. They also point to the fact that plaintiff, by his own testimony, experienced no significant physical problem in performing his duties as a police officer.

In challenging the sufficiency of evidence, defendants additionally cite the testimony of Dr. Barry Maron, an orthopedic specialist, who examined plaintiff on four occasions between 1979 and 1983, and who testified that there was no objective evidence to support the plaintiff's subjective complaints; Dr. William Keightley, a psychiatrist who treated plaintiff for anxiety and depression, and who testified that he "had the impression" that he was dealing with a "physically intact" person; Dr. Kropinak, who examined plaintiff for the Rio Rancho police department job, testified that he found plaintiff to be in excellent health; Mr. Mulholland, deputy director of the Academy, testified that plaintiff had fulfilled both the Academy's physical and mental entry and graduation requirements; and Rio Rancho Police Chief Haycox, who said he was not aware that plaintiff suffered from any physical disability during the time he was employed with that department.

In contrast to the evidence relied upon by defendants, plaintiff presented evidence of a continuing physical disability, although somewhat diminished in degree. Plaintiff testified that he continues to suffer back and neck pain, dizziness, headaches, and numbness of his right arm; that these symptoms are aggravated whenever he attempts any hard physical work; and that, consequently, he has been unable to return to his chosen work as a carpenter. Plaintiff also testified that after losing his job as a police officer, he attempted to work as a millwright, but that notwithstanding this work was less strenuous than carpentry, he was unable to do the work for any sustained period of time and, in fact, had to request that he be "laid off."

Plaintiff further testified that his job as a police officer involved less physical exertion and that he had to use actual force only one time in his seven months as a policeman. Additionally, plaintiff testified that, whereas he had earned approximately $1,800 per month as a carpenter, he earned little more than $966 per month as a police officer.

Plaintiff's testimony was augmented by Dr. Michael Plaman, a chiropractor who testified that plaintiff had poor reflexes and weakened motor capability in his upper body, and that he has a reduced range of movement resulting from spinal degeneration. Dr. Plaman stated that in his opinion, plaintiff is 100 percent disabled from working as a carpenter since that work involves heavy lifting and persistent use of the upper body and arms but that plaintiff was only 30–40 percent disabled as to performing other types of work and that he could still do "many things."

Defendants assert Dr. Plaman's opinion concerning plaintiff's disability went beyond the limited area of his expertise. However, Dr. Plaman's opinion concerning the plaintiff's physical limitations based upon the physical examination conducted by the witness were relevant to the issue of disability. Defendants concede that in New Mexico chiropractors have been deemed competent to give testimony within their area of training and education. *Selgado v. Commercial Warehouse Co.*, 86 N.M. 633, 637, 526 P.2d 430 (Ct.App.1974). *Compare Katz v. New Mexico Department of Human Services*, 95 N.M. 530, 624 P.2d 39 (1981). Defendants did not object to Dr. Plaman's qualifications as an expert witness nor to his testimony during the hearing. The focus of defendants' objections goes to the weight to be accorded Dr. Plaman's testimony, not its admissibility. The weighing of evidence and credibility is a matter for determination of the trial court as the fact finder, not the appellate court. *Newcum v. Lawson*, 101 N.M. 448, 684 P.2d 534 (Ct.App.1984).

The argument of defendants also centers upon plaintiff's return to full-time employment as a police officer and his testimony that he was not physically disabled from performing that job. Defendants contend that plaintiff's resumption of full-time employment conclusively indicates that plaintiff is no longer disabled to any percentage extent.

The statutes defining disability, NMSA 1978, Sections 52–1–24 and –25, have been construed to contain two tests for determining disability: (1) the workman must be totally or partially unable to perform the work he was doing at the time of the injury; and (2) the workman must be wholly or partially unable to perform any work for which he is fitted and qualified. *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976). Both the supreme court and this court have held that the second test should not be narrowly applied. *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). In *Anaya*, the supreme court rejected an argument similar to that advocated by defendants here, that the claimant should be denied disability benefits because of a demonstrated ability to perform work other than the type of work he was performing at the time of injury. The court repudiated what it termed the "proposition that a workman is not disabled if he is able to perform any work," saying this was a "strained and unreasonable" construction of the statute. The court held that the phrase "unable ... to perform any work· for which he is fitted," means an inability to perform some of the work for which he is fitted, given the workman's previous training and work experience as well as his age, education, and physical and mental condition. To hold otherwise, the court stated, would have the effect of discouraging a workman from seeking post-injury employment.

Similarly, in *Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980), this court held that the existence of post-injury employment does not necessarily disqualify the workman from receiving disability benefits. In *Schober*, as here, claimant's income was substantially reduced by the fact that he was unable to return to his previous work. There, it was held that since claimant's current work did not utilize his training and background experience in electronics, and because he was unable to perform some of the work for which he was fitted, the trial court erred in finding that the workman's disability effectively terminated at the time he became re-employed. Other New Mexico

cases have reached the same conclusion. *See Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981); *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979).

In his appeal, plaintiff argues that the trial court erred in not finding the existence of a higher percentage of permanent partial disability. Plaintiff concedes that his disability is no longer total; however, he argues that the trial court was not justified in finding less than a 35 percent permanent partial disability, given Dr. Plaman's testimony that plaintiff is 30 to 40 percent disabled "as a person." We disagree. Dr. Plaman's testimony was in direct conflict with the testimony of Dr. Maron, an orthopedic specialist, who testified that plaintiff gave physically improbable and deceptive responses to some of his questions. In *Schober*, this court said that the determination of the degree of disability in workmen's compensation cases is generally a matter for the trial court, and absent a lack of substantial evidence or a misapplication of the law, a reviewing court will not second-guess the trial court. *See also Trujillo v. Tanuz*, 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973).

Under the facts herein, including the plaintiff's own testimony and that of Dr. Plaman, the trial court was justified in finding that the plaintiff continued to remain permanently partially disabled. In *Romo v. Raton Coca Cola Co.*, 96 N.M. 765, 635 P.2d 320 (Ct.App.1981), it was held that the trial judge may properly reject all percentage opinions and arrive at a different percentage as long as that figure is supported by substantial evidence. *See also Sedillo v. Levi-Strauss Corp.*, 98 N.M. 52, 644 P.2d 1041 (Ct.App.1982).

In reviewing evidence on appeal, an appellate court construes the evidence and all reasonable inferences therefrom in a light most favorable to the findings of the trial court. *Perez v. International Minerals & Chemical Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981). Additionally, in *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977), the court held that a claimant's own testimony may constitute substantial evidence supportive of a finding of disability.

The trial court's finding the plaintiff has a 15 percent disability is supported by substantial evidence.

## II. DENIAL OF REIMBURSEMENT

Defendants contend that the trial court erred in refusing to order that plaintiff reimburse them for workmen's compensation benefits paid by them after the date of October 22, 1981, when plaintiff returned to full-time employment as a policeman.

The facts are undisputed that from October 22, 1981, when plaintiff went to work as a police officer, until March 15, 1983, when defendants halted benefit payments to him, plaintiff continued to receive payment of weekly *total* disability compensation amounting to approximately $13,-525.88. In their requested findings and conclusions, defendants asked the trial court to find that plaintiff's failure to advise them of his full-time employment while continuing to receive workmen's compensation benefits (based on total disability) constituted fraud and unjust enrichment, entitling them to full reimbursement of all amounts paid to plaintiff during this period.

The trial court refused defendants' requested findings and conclusions and ruled that NMSA 1978, Section 52–1–56, as a matter of law, precludes any retroactive determination of benefits. The court also concluded in part:

2. Plaintiff was entitled to receive benefits as determined by the Court until such time as the Court terminated or diminished his benefits pursuant to section 52–1–56, NMSA, 1978. Plaintiff should have continued receiving benefits until such time as a hearing was held on defendants [sic] motion to terminate or diminish. Therefore, plaintiff's benefits were wrongfully terminated on March 15th, 1983.

3. Plaintiff is entitled to recover from defendants the benefits which were withheld between March 15th, 1983 and the date of the hearing on defendants [sic] motion at the rate of $186.38 per week.

In addition to concluding that defendants were not entitled to reimbursement, the court also determined that defendants were additionally liable for the payment of $9,691.76 in total disability payments from March 15, 1983 through the date of the hearing on March 2, 1984.

Two separate statutory provisions of the Workmen's Compensation Act relate to the issue before us. NMSA 1978, §§ 52–1–47(C) and –56(A).

Section 52–1–47(C) states that *"in no case shall compensation benefits for disability continue after the disability ends or after the death of the injured workman."* (Emphasis added.)

Section 52–1–56 provides in applicable part:

A. The district court in which any workman has been awarded compensation under the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978] may, upon the application of the employer, workman or other person bound by the judgment, fix a time and place for hearing upon the issue of claimant's recovery and if it shall appear upon such hearing that diminution or termination of disability has taken place, the court shall order diminution or termination of payments of compensation *as the facts may warrant * * *. Hearings may not be held more frequently than at six-month intervals, and ... the compensation of the workman as previously awarded shall continue while the hearing is pending * * *.* [Emphasis added.]

A motion to modify an award of compensation requires an evidentiary hearing with the entry of new findings of fact and conclusions of law and a new judgment. *Burton v. Jennings Brothers,* 88 N.M. 95, 537 P.2d 703 (Ct.App.), *cert. denied,* 88 N.M. 318, 540 P.2d 248 (1975); *Goolsby v. Pucci Distributing Co.,* 80 N.M. 59, 451 P.2d 308 (Ct.App.1969).

The language of Sections 52–1–47 and –56 are in conflict insofar as both statutes purport to specify the time when a district court may modify or terminate a previous award of compensation when the court determines that a workman's impairment no longer exists or has diminished.

The two conflicting statutory provisions were enacted by the legislature at different times. Section 52–1–56 providing that the compensation previously awarded to the workmen shall continue while the hearing is pending, was originally adopted by 1945 N.M. Laws, chapter 65, section 1. Subsequently, Section 52–1–47(C), was adopted by 1959 N.M. Laws, chapter 67, section 26. The manifest intent of Section 52–1–47(C) providing that compensation benefits shall cease when "the disability ends" prevails over any contradictory statutory provision since it is a later declaration of legislative intent and effectively repeals by implication the earlier conflicting legislative language. *Abbott v. Armijo,* 100 N.M. 190, 668 P.2d 306 (1983); *Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 650 P.2d 3 (Ct.App.1982). Moreover, the section heading for Section 52–1–47, adopted by the legislature, declares that the provisions of this section are intended to constitute "limitations on compensation benefits."

In the instant case defendants terminated all payments prior to the hearing on their motion to terminate or modify benefits. The hearing on defendants' motion to modify compensation benefits was inexplicably delayed for over a year following the filing of the motion. This delay is contrary to the clear mandate of the Workmen's Compensation Act that such proceedings be promptly heard. *Perez v. International Minerals & Chemical Corp.* Defendants unilaterally stopped payments of all benefits in March 1983 and the hearing on the motion was held in March 1984. As provided in NMSA 1978, Section 52–1–35 (Cum. Supp.1984), the district court is directed to "advance the cause on the court's calendar and dispose of the case as promptly as possible."

The trial court erred in concluding that plaintiff was entitled, as a matter of law, to total disability benefits from March 15, 1983 to March 2, 1984, and in concluding that defendants were not entitled to any reimbursement.

On remand the court should make a factual determination of the date or dates that plaintiff's disability changed and determine the extent of his disability from the time he returned to work as a law enforcement officer until the date of hearing on March 2, 1984, when plaintiff was found to be 15 percent disabled. If plaintiff's disability is determined to have diminished prior to the date defendants terminated payment of compensation benefits, the trial court should factually determine whether defendants are entitled to a credit for overpayment made by them against the payment of future workmen's compensation benefits as provided in *Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 689 P.2d 289 (Ct.App.1984). Section 52–1–56(A). *See also Roybal v. Chavez Concrete & Excavation Contractors, Inc.*, 102 N.M. 428, 696 P.2d 1021 (Ct.App.1985).

### III. ATTORNEY'S FEES

In his appeal, plaintiff argues that the trial court erred in denying any award of attorney's fees incident to the hearing on defendants' motion for modification of the award of compensation benefits.

The issue of whether a plaintiff is entitled to an award of attorney's fees in connection with a hearing to modify a prior judgment allowing workmen's compensation benefits, and where the previous judgment has been ordered reduced, is a matter of first impression in New Mexico. Plaintiff argues that he is entitled to attorney's fees based upon his success in obtaining a judgment for benefits wrongfully withheld (i.e., the total disability payments withheld by defendants from March 15, 1983, until the March 2, 1984 hearing), and in successfully defending against the defendants' claim for reimbursement.

We have held that the trial court, on remand, must determine, as a fact, plaintiff's disability from October 22, 1981 to March 2, 1984. Pending that determination, plaintiff has not obtained benefits wrongfully withheld and has not successfully defended against defendants' claim for reimbursement. Thus, under plaintiff's own theories, plaintiff is not entitled to attorney's fees in the trial court at the present time.

If, upon remand, the trial court determines that defendants are entitled to reimbursement for overpayments between October 22, 1981 and March 15, 1983, plaintiff would not have been successful as to this issue. If, upon remand, the trial court determines that defendants are not liable for total disability benefits between March 15, 1983 and March 2, 1984, then plaintiff will not have been successful as to this issue.

Plaintiff does not rely on NMSA 1978, Section 52–1–54(E) in claiming an entitlement to attorney fees. Yet, that section specifically addresses the issue. It provides:

> [I]n all actions arising under the provisions of Section 52–1–56 NMSA 1978, where the jurisdiction of the court is invoked to determine the question whether the claimant's disability has increased or diminished, and the claimant is represented by an attorney, the court shall determine and fix a reasonable fee for the services of claimant's attorney only if the claimant is successful in establishing that his disability has increased or if the employer is unsuccessful in establishing that claimant's disability has diminished, as the case may be.

If, on remand, defendants are successful in their claim that plaintiff had no disability, no attorney fees are authorized. If, however, the trial court determines that plaintiff was 15 percent disabled (as an example only) between October 22, 1981 and March 2, 1984, the employer would have been "unsuccessful in establishing that claimant's disability had diminished" to that percentage extent. An award of attorney fees would be authorized on the basis of defendants' lack of success. To the extent that defendants' claim is unsuccessful, plaintiff has preserved a benefit

for which attorney fees may be awarded. *Romo v. Raton Coca Cola Co.*

The cause is remanded to the trial court for further proceedings consistent with this opinion. Plaintiff is awarded $900 for the services of his attorney in defending the 15 percent disability award as of March 2, 1984 on appeal.

IT IS SO ORDERED.

WOOD, J., concurs.

BIVINS, J., specially concurring.

BIVINS, Judge (specially concurring).

I agree with the majority that substantial evidence supports a reduced partial disability of 15%, and agree with the attorney fee discussion. I also agree with the result as to the reimbursement issue, but not the reasoning.

The majority holds that NMSA 1978, Section 52–1–56(A) which provides that, "the compensation of the workman as previously awarded shall continue while the hearing is pending" conflicts with NMSA 1978, Section 52–1–47(C) that "in no case shall compensation benefits for disability continue after the disability ends or after the death of the injured workman." According to the majority, the "manifest intent" of Section 52–1–47(C) prevails over any contradictory statutory provision (Section 52–1–56(A)), since it represents a later declaration of legislative intent and effectively repeals by implication the earlier conflicting legislative language.

Because the two provisions can be read together in harmony in order to ascertain the legislative intent, *Allen v. McClellan*, 75 N.M. 400, 405 P.2d 405 (1965), I find no conflict, and, therefore, disagree with the approach taken by the majority.

Section 52–1–56(A) provides the machinery for increasing, reducing or terminating compensation "as the facts may warrant." Hearings for these purposes may not be held more frequently than at six-month intervals. And the compensation previously awarded shall continue while the hearing is pending. Section 52–1–47 simply sets general limitations on compensation benefits, and does not, in my opinion, conflict with or alter the statutory scheme for increasing, reducing or terminating compensation as covered by Section 52–1–56(A).

While Section 52–1–56(A) does not expressly provide for retroactive application and, given the short intervals when applications for changes in compensation may be made, such would not ordinarily be contemplated; nevertheless, equitable principles may warrant retroactive application in an appropriate case. *See Anaya v. City of Santa Fe,* 80 N.M. 54, 451 P.2d 303 (1969) (holding courts may consider equitable principles in worker's compensation proceedings).

Here, defendants claim fraud and unjust enrichment. Because of the language in Section 52–1–56(A) requiring continuation of compensation while the hearing is pending, the trial court apparently believed it lacked authority to make a retroactive determination. I agree with the majority that the trial court can make such a determination and would remand for that purpose. For the reasons stated, however, I do not believe it necessary to hold the language of Section 52–1–56(A) repealed in order to reach this result.