696 P.2d 1021

Santiago ROYBAL, Plaintiff-Appellee,

v.

CHAVEZ CONCRETE & EXCAVATION CONTRACTORS, INC., Employer, and Rockwood Insurance Company, Insurer, Defendants-Appellants.

No. 7777.

Court of Appeals of New Mexico.

Feb. 28, 1985.

Victor Roybal, Jr., Albuquerque, for plaintiff-appellee.

Howard R. Thomas, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendants-appellants.

## OPINION

ALARID, Judge.

Chavez Concrete & Excavation Contractors, Inc., and Rockwood Insurance Company (defendants) appeal the decision of the trial court in favor of Santiago Roybal (plaintiff). In their appeal defendants raise two issues: first, that the court's judgment, which granted plaintiff full worker's compensation benefits for the period re- quired by Section 52–1–43 of the Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 to –69 (Orig.Pamp. and Cum. Supp.1984), was in conflict with the court's earlier findings of fact, and, second, that credit should have been given to defendants for pre-judgment overpayments. We find the first issue to have merit, and we reverse and remand for entry of a new judgment which conforms to the court's findings. Upon remand, the trial court is to decide the credit issue identified in this opinion.

## FACTS

Plaintiff was injured while working as a cement finisher on May 21, 1980, when he fell half the way down a 75-foot stairway. As a result of the fall, plaintiff fractured his ribs and injured his knee and underwent surgery to repair his knee the next day. He had two more surgical procedures on his leg, the last occurring in December of 1980. Plaintiff's surgeon, Dr. Barry Maron, testified that he was not totally disabled after the third surgery, but rather suffered from a permanent fifteen to twenty percent impairment of his knee. This lawsuit involves only the knee injury.

Plaintiff was paid total temporary disability from the date of the accident to September 10, 1982, the date when defendants reduced plaintiff's compensation to $28.01—fifteen percent of the maximum compensation rate. Suit was filed on January 15, 1982 for medical transportation expenses. After the reduction of benefits, the complaint was amended to contest the reduction.

After trial, the court found that "[a]s a natural and direct result of his left knee injury, Plaintiff has a 15–20% impairment (loss of use) of the left leg between the knee and ankle." The trial court further concluded that "[p]laintiff's sole injury was to a scheduled member * * *." Defendants then moved to amend conclusion of law number eight to reflect the percentage—either fifteen or twenty percent—of the scheduled member award. The trial court reserved judgment on this motion,

although it indicated at the hearing on this motion that it believed its intent was to keep the fifteen to twenty percent impairment. At the hearing on attorney fees, conducted after entry of the court's findings and conclusions, defendants moved orally for an award of credit for prior overpayments. The trial court denied this motion for the reason that it was not presented to the court earlier and, thus, not preserved. Defendants then moved for a rehearing on this issue. The court never acted on this motion. On appeal, the parties proceed on the assumption that the unruled on motion was denied by operation of law. Without considering the propriety of the assumption, we proceed on the same basis.

The court's judgment directed that plaintiff should recover the full compensation benefits for the maximum number of weeks allowable on the schedule for injuries to a leg between a knee and an ankle from September 10, 1982, pursuant to Section 52–1–43(A)(31).

## DISCUSSION

### I. A JUDGMENT, WHICH CONFLICTS WITH THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW, MUST BE REDRAFTED TO CONFORM.

■ Defendants contend that the trial court's findings and conclusions generally, and particularly numbers sixteen and seventeen and conclusion number eight, conflict with the court's judgment. Finding sixteen declared that the knee injury left plaintiff with "a 15–20% impairment (loss of use) of the left leg between the knee and ankle." Finding seventeen determined that plaintiff had no other separate and distinct injury to any other part of his body. In conclusion eight, the trial court states that plaintiff's recovery is set forth in the schedule, plus total temporary disability from the date of the accident to December 22, 1980.

Section 52–1–43(B) provides that for a *partial loss of use* of one of the body members or physical functions listed in the schedule, "the workman shall receive com-pensation computed on the basis of the degree of such partial *loss of use*, payable for the number of weeks applicable to total loss or loss of use of that body member * * *." *Id.* (emphasis added).

■ The trial court's finding number sixteen of fifteen to twenty percent loss of use effectively compels the trial court to order a judgment accordingly. *See Sachs v. Board of Trustees of Town of Cebolleta Land Grant,* 89 N.M. 712, 557 P.2d 209 (1976). The judgment ordering payment of 100% of the amount of the compensation rate is in conflict with the court's findings. When a finding supported by substantial evidence conflicts with an opinion, the finding prevails. *In Re Will of Carson,* 87 N.M. 43, 529 P.2d 269 (1974). The testimony of Dr. Maron supported the finding as to partial loss of use and the finding on the absence of a separate and distinct impairment to another part of the body.

■ This finding also conflicts with conclusion number eight, which grants recovery as set out in the schedule. The section cited, Section 52–1–43(A)(31), contemplates that defendant receive compensation for total loss of use. The provision for a percentage payment for a partial loss of use is contained in Section 52–1–43(B). Because the finding also prevails over a conflicting conclusion, *In Re Will of Carson,* the finding of only a percentage of impairment must prevail.

■ Therefore, the finding must prevail and this portion of the trial court's judgment which awards full compensation for 130 weeks is reversed and remanded with directions to vacate the order and to enter judgment for compensation based on a specific percentage of loss of use as the "degree of such partial use," *see* Section 52–1–43(B), must be determined in order to compute the monetary amount of compensation to which plaintiff was entitled. Thus, upon remand, the trial court is directed to delete "15–20%" from its finding sixteen and substitute a specific percentage amount. A trial court, when requested, must find one way or another on a material fact issue. *Aguayo v. Village of Chama,* 79 N.M. 729, 449 P.2d 331 (1969).

■ However, a further modification of the judgment is required. In its conclusion number eight, the trial court determined that the healing period ended on December 22, 1980. We read this as a finding of fact. *See Clark v. Duval Corp.*, 82 N.M. 720, 487 P.2d 148 (Ct.App.1971). In the court's judgment, the healing period can only be interpreted as ending on September 10, 1982. Defendants do not challenge this finding; neither does plaintiff, who reminds us that the district court findings must be accepted as true. Unless findings are directly attacked, they are the facts on appeal. *Wood v. Citizens Standard Life Insurance Co.*, 82 N.M. 271, 480 P.2d 161 (1971). In his answer brief, plaintiff asserts the trial court's judgment was correct because of an asserted lack of evidence "establishing Plaintiffs' [sic] non-disability during the time he was paid." If this was intended as an attack on the finding it was deficient under *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). However, even if there was an attack on the finding, it will not be reviewed because plaintiff has not proceeded under NMSA 1978, Civ.App.Rule 3(b) (Repl.Pamp.1984).

We accept as true the finding that the healing period ended on December 22, 1980. Accordingly, the judgment on remand shall provide that the scheduled number of weeks of compensation is to run from December 22, 1980.

Plaintiff's main argument, in defense of the judgment, is based on a misreading of the findings. He asserts that in finding seventeen the trial court found a total loss of use, and in finding sixteen the trial court found a fifteen to twenty percent impairment. We disagree. Finding sixteen, previously quoted, clearly states a fifteen to twenty percent loss of use. Finding seventeen refers to the injury and "resulting loss of use." Finding seventeen must be read in conjunction with finding sixteen.

## II. CREDIT FOR PRE-JUDGMENT OVERPAYMENTS.

Defendants further argue that the trial court erred in not crediting them with past overpayments of benefits. Defendants assert that they "do not seek to recover from Plaintiff overpayments paid to Plaintiff," but rather "simply seek to have the * * * overpayments credited against their obligations to Plaintiff as determined by the trial court."

■ The trial judge denied the motion for credit at the attorney fees hearing on the basis that it was untimely. We disagree for two reasons. First, in their answer defendants pled the affirmative defense of payment:

Defendant, Rockwood Insurance Company, has paid any and all compensation and medical payments due for any accidents suffered by Plaintiff, and Plaintiff has no claim against these Defendants.

The "credit" sought was credit for payments that had been made, and, as such, was not an issue separate from the payments. Therefore, the issue of credit was properly before the trial court throughout the litigation. Defendants then properly invoked a decision by the court at the attorney fees hearing. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). The issue is also properly before this court. *Id.*

Second, we agree, as defendants contend, that the credit issue is not new and "goes only to the interpretation of the judgment and the reconciliation of the judgment with the Court's findings and conclusions." As we understand the credit argument preserved by defendants, it is limited to the credit that the judgment should have reflected had it been consistent with the findings of fact.

Defendants' requested findings presented the court with two alternative theories: that plaintiff did not sustain compensable injury, or that plaintiff suffered a fifteen to twenty percent impairment to his left leg between the knee and ankle after his healing period which lasted until December 22, 1980. The trial court accepted defendants' second theory.

■ The findings of fact and conclusions that the trial judge entered were consistent with the second theory. *See* NMSA 1978, Civ.P.R. 52(B)(1)(b) (Repl.Pamp.1980). Until the attorney fee hearing, defendants ap-

parently believed, and were entitled to assume, that the judgment would be consistent with the findings and conclusions. Under the circumstances, the fact that defendants did not request specific findings does not preclude our review on appeal. *See* App.R. 308.

A judgment cannot be sustained on appeal unless the conclusion on which it is based finds support in one or more findings of fact. *Thompson v. H.B. Zachry Co.*, 75 N.M. 715, 410 P.2d 740 (1966). The parties appeared to discover the ambiguity in the trial court's decision at the hearing on attorney fees. The hearing reflects the confusion between the parties and the court as to what the findings and conclusions meant. Defendants argued for a credit based on the amount of the award mandated by the findings and conclusions. Plaintiff's counsel then observed that there was a "misunderstanding" about the amount of the award. Defendants brought the ambiguity to the trial judge's attention and thereafter, at his suggestion, defendants moved for rehearing. These actions were sufficient to preserve the issue of whether the judgment was consistent with the findings and conclusions. That issue includes the question of whether the trial judge correctly credited defendants with payments made prior to judgment. *See* § 52–1–38(A).

Under the trial court's findings, plaintiff was entitled to total disability payments from May 21, 1980, to December 22, 1980. Thereafter, plaintiff was entitled to a partial loss of use for 130 weeks. Section 52–1–43(A)(31). Plaintiff's entitlement to compensation ended on June 22, 1983. Defendants paid total disability through September 10, 1982. Clearly, this covered partial loss of use payments through September 10, 1982.

The trial court also found that defendants paid at the rate of fifteen percent, or $28.01 per week, from September 10, 1982, to the time of trial, which was August 29, 1983. Defendants paid past the time that compensation should have ended.

If, on remand, the trial court determines that fifteen percent applies, there is no credit issue left to determine because that amount has been paid.

If, on remand, the trial court determines that twenty percent applies, there is a limited credit issue. The twenty percent figure (twenty percent of $186.76) equals $37.35 per week. The difference amounts to $9.34 per week. From September 10, 1982 to June 22, 1983, under the twenty percent figure, plaintiff was entitled to $37.35 for 285 days, or 40–5/7 weeks. This equals a total of $1,520.68. Because defendants paid $28.01 from September 10, 1982 to August 29, 1983, a period of 50–3/7 weeks, plaintiff received a total of $1,412.50. The difference is $108.18, or the amount of compensation owed if credit is given for payments made after June 22, 1983. If credit for payments made after June 22, 1983 is not given, the difference is $272.09 (50–3/7 minus 40–5/7 times $28.01).

Two credit issues are involved on remand: First, whether credit is to be given to defendants' payments made after June 22, 1983 (the end of the entitlement), and, second, whether credit is to be given for overpayments of total disability during the time plaintiff was only entitled to partial loss of use, December 22, 1980 to September 10, 1982. These issues are to be decided pursuant to *Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 689 P.2d 289 (Ct.App.1984).

Reversed and remanded for entry of a new judgment which conforms to the findings, for a determination of the *exact* percentage of loss of use, and for a determination of the form of credit should the twenty percent figure be adopted.

No attorney fees are awarded on appeal. Upon remand, the trial court may reconsider its attorney fees award. No costs are to be awarded.

IT IS SO ORDERED.

WOOD and MINZNER, JJ., concur.