This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38948**

**LIVINGSTON LAND, LLC,**

      Plaintiff,

v.

**CLAYTON BROOKER,**

      Defendant-Appellant,

and

**LISA BROOKER and CLAYTON BROOKER,**

      Plaintiffs-Appellants,

v.

**KENNETH LIVINGSTON and IRENE LIVINGSTON,**

      Defendants-Appellees,

and

**HEALTHY EDUCATION SOCIETY, HEM LLC, KENDALL LIVINGSTON, and ROBERT ARANDA,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Court Judge**

Newell Law Firm, LLC

Michael Newell
Christan Quiroz Valencia
Lovington, NM

for Appellants

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Justin R. Kaufman
Rosalind B. Bienvenu
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Plaintiffs Lisa and Clayton Brooker appeal the district court's decision in their breach of contract claim against Defendants Irene and Kenneth Livingston, arguing that the district court erred in finding the contract illegal and void. Assuming without deciding that the district court erred regarding the legality of the contract, we agree with Defendants and the district court that Plaintiffs failed to prove damages, and we therefore affirm.

## BACKGROUND

**{2}**     This case arises out of a contract to grow medical cannabis under a single New Mexico licensed nonprofit producer (LNPP) license. Defendants, along with their now-deceased son Andrew Livingston, founded Healthy Education Society (HES) under the Lynn and Erin Compassionate Use Act, NMSA 1978, §§ 26-2B-1 to -10 (2007, as amended through 2021). The New Mexico Department of Health (DOH) licensed HES as an LNPP in 2010 and authorized the cultivation of 150 cannabis plants. Defendants managed all of HES's operations, cultivating the 150 cannabis plants and selling the product in their medical cannabis dispensary in Albuquerque, New Mexico. In 2014, DOH increased the number of HES's authorized plants to 450 plants. Defendants did not have the capacity to increase their medical cannabis production and began receiving requests from parties interested in entering into a contract to increase production capacity.

**{3}**     In February 2015, Defendant Kenneth Livingston met with Plaintiffs, who had planned to move to Colorado and enter the cannabis industry there. After speaking with Plaintiffs, Defendant Kenneth Livingston offered for them to "effectively be given the right to grow 150 cannabis plants under the HES license" on land owned by their son Kendall Livingston under Livingston Land, LLC. The deal required Plaintiffs to pay the $30,000 annual license fee for the 150 plants, be responsible for all of their own

production costs, and sell the medical cannabis to Defendants, who in turn would sell it at the Albuquerque medical cannabis dispensary. In return, Plaintiffs would retain all the revenue generated from the sales to Defendants. Alternatively, if Defendants were not able to purchase the entire production, Plaintiffs could sell the surplus to another LNPP, keep ninety percent of the profits generated, and transfer the remaining ten percent to Defendants. Plaintiffs' operation would be under HES's LNPP license, without HES's supervision and control. Plaintiffs accepted the offer, but the contract was not produced in writing or disclosed to DOH.

{4}     Shortly after the parties entered into the agreement, Plaintiffs used their own money to build and equip a growing facility for their own medical cannabis production on land owned by Livingston Land, LLC. Once Plaintiffs began production, it became evident that HES would not be able to purchase all of Plaintiffs' medical cannabis production. Rather than selling the surplus to another LNPP, Plaintiffs began selling the product themselves—opening three medical cannabis dispensaries in Artesia, Carlsbad, and Hobbs, New Mexico. The dispensaries were not part of the agreement, but Defendants did not object. Plaintiffs continued growing their medical cannabis operation under the HES license and agreed to take over an additional 150 plants and pay the corresponding license fee. Plaintiff Clayton Brooker, under his own name, entered into a separate contract with Livingston Land, LLC to use one of its buildings to grow the additional 150 plants.

{5}     Plaintiffs did not maintain appropriate accounting records, conducted all of the transactions involving the sale of medical cannabis in cash, and failed to provide HES any of its dispensaries' financial information. Plaintiffs kept all of the net income generated. Plaintiffs did not provide any of its dispensaries' profit to HES; the only money Plaintiffs transferred was the monthly reported gross receipt taxes, which Defendants never took any steps to confirm. HES was unable to ensure Plaintiffs' compliance with regulations applicable to its business, resulting in regulation violations and temporary suspensions of HES's operations.

{6}     In 2017, the parties sought to part ways, and Defendants intended to get out of the medical cannabis business altogether. In early 2018, Plaintiffs and Defendants met with Alan Goncharoff and Robert Aranda, who were interested in opportunities in the New Mexico medical cannabis industry. In the meeting, Defendants characterized Plaintiffs as employees with "vested interest" in HES, who were allowed to manage 300 cannabis plants and the three dispensaries in southern New Mexico. Goncharoff prepared a letter of intent that was signed by himself, on behalf of a company he controlled called Craft NM, LLC, and by Defendants, personally and on behalf of HES. A month later Goncharoff dropped from the deal, and Craft NM, LLC assigned all of its rights and obligation under the letter of intent to Zia Plus, a for-profit corporation specifically chartered to manage HES. After conducting due diligence, Zia Plus took over the operation of HES in March of 2018.

{7}     Litigation ensued between the parties in the transactions described above, and the district court consolidated related lawsuits. Most of the claims were dismissed by

mutual agreement of the parties on the date of trial. Plaintiffs' claims against Defendants for declaratory relief, breach of contract, fraud, and negligent misrepresentation remained. Pursuant to Rule 1-008(D) NMRA, the district court deemed admitted all averments in Plaintiffs' complaint against Defendants after Defendants failed to file a responsive pleading to the complaint. All that remained for trial was for Plaintiffs to prove damages against Defendants. *See* Rule 1-008(D). After the ensuing bench trial, the district court found the contract illegal and that Plaintiffs failed to provide credible evidence to establish expenses. Plaintiffs appeal.

## DISCUSSION

**{8}** Plaintiffs argue that the district court erred in not awarding damages because the contract they entered with Defendants is legal and Plaintiffs proved damages during trial. Defendants concede that the district court erred and that the contract is legal. Although we are not bound by Defendants' concession, having reviewed the parties' arguments and the record on appeal, we accept the concession here. *See State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (explaining that the court accepted the state's concession regarding an issue despite appellate courts not being required to do so). Nonetheless, Plaintiffs fail to challenge any of the district court's findings regarding damages. Accordingly, we accept the district court's factual findings and conclude that the district court did not err in finding that Plaintiffs failed to prove damages. *See Roybal v. Chavez Concrete & Excavation Contractors, Inc.*, 1985-NMCA-020, ¶ 11, 102 N.M. 428, 696 P.2d 1021 (stating that "[u]nless findings are directly attacked, they are the facts on appeal").

**{9}** We review the district court's findings regarding damages for substantial evidence. *Jones v. Auge*, 2015-NMCA-016, ¶ 48, 344 P.3d 989. "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "[W]e review the evidence in the light most favorable to support the [district] court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). "We will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* (alteration, internal quotation marks, and citation omitted).

**{10}** Plaintiffs contend that "[w]hen the admitted averments are considered, it appears clear the [district] court was simply wrong in refusing to enforce the contract and award the damages proven." Admitted averments, standing alone, are not sufficient to prove the amount of damages. *See* Rule 1-008(D). Plaintiffs still were obligated to provide evidence in support of the damages sought, which they failed to do. *See Gallegos v. Franklin*, 1976-NMCA-019, ¶ 39, 89 N.M. 118, 547 P.2d 1160 (noting that "[the p]laintiff must produce evidence on amount of damages to be awarded which may be contested").

**{11}**     Plaintiffs relied solely on the testimony of Plaintiff Clayton Brooker to prove damages. Clayton testified regarding the costs incurred in building the growing facility, opening his own dispensaries, yearly licenses, and other operational costs.[1] The district court was unconvinced by his testimony, finding that portions of his testimony were unsupported by evidence, contradictory, and "untenable." The district court, as the fact-finder, has the sole responsibility to weigh the testimony and determine the credibility of the witness; we do not reweigh the credibility of live witnesses. *Casias Trucking*, 2014-NMCA-099, ¶ 23.

**{12}**     "A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition." Rule 12-318(A)(3) NMRA. We have reviewed the briefing and have found no direct challenges to the district court's findings of fact and no relevant citations to the record demonstrating that the district court's findings were unsupported by substantial evidence. Accordingly, Plaintiffs have waived any challenge to the district court's findings of fact, and we adopt the district court's findings on appeal. *See Roybal*, 1985-NMCA-020, ¶ 11.

**{13}**     Adopting the district court's findings of fact, we conclude that there is substantial evidence to support the district court's conclusion that Plaintiffs failed to prove damages. *See Jones*, 2015-NMCA-016, ¶ 48. The district court's undisputed findings of fact extensively discuss Plaintiffs' failure to provide evidence of certain damages. For example, Plaintiffs failed to present evidence regarding some of the costs associated with the growing facility including construction of the metal building, renting a backhoe for excavation, the diesel generator for electricity, and the electrical work performed. Furthermore, the district court found that Plaintiffs failed to present evidence regarding the costs associated with opening and operating the three dispensaries, including the purchase of seeds, pots, soil, and chemicals, materials and services for remodeling the Artesia and Hobbs dispensary, and the survey performed on the Carlsbad and Hobbs dispensaries. The district court further found that any costs incurred by Plaintiffs were offset by money brought in by the business.

**{14}**     The district court did not err, therefore, in refusing to award damages to Plaintiffs.

## CONCLUSION

**{15}**     For the foregoing reasons, we affirm.

**{16}     IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

---

1During his testimony, Clayton repeatedly referenced a "list" of damages he had compiled but no such list was offered into evidence.

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**