729 P.2d 1379

**Elizabeth SMITH, Plaintiff-Appellee,**

v.

**CITY OF ALBUQUERQUE, a
Self-Insured Employer,
Defendant-Appellant.**

**No. 9179.**

Court of Appeals of New Mexico.

Nov. 6, 1986.

Jeffrey L. Baker, Tryon, Pompei & Baker, P.A., Albuquerque, for plaintiff-appellee.

Terry R. Guebert, Paul L. Civerolo, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

The City of Albuquerque appeals from a decision of the district court awarding appellee, Elizabeth Smith, temporary total disability and permanent partial disability in a worker's compensation case. We (1) answer two issues summarily and discuss (2) whether the injury arose out of and in the course of her employment, (3) whether the trial court erred in determining the period appellee was totally temporarily disabled and in finding permanent partial disability, (4) whether the City is entitled to reduction of benefit payments, (5) and whether there was error in failing to find that appellee suffered a separate work-related injury. We affirm, except for that portion of the award which involves overlapping compensation payments for both a prior disability adjudicated under Colorado law and the payments under New Mexico law involving the present claim.

This case involves a worker's injury incurred off the employer's premises during lunchtime. Smith was employed by the City as a risk management coordinator. On January 24, 1984, she had lunch with an assistant city attorney, Barbara Stephenson, at a restaurant in downtown Albuquerque. As Smith and Stephenson left the restaurant, Smith tripped over a carpet strip and injured her back. As a result of this injury, Smith underwent treatment for nerve root compression at St. Joseph's Hospital. Smith was hospitalized a second time, during the month of June, 1984, for psychological and emotional problems, including depression. Thereafter, Smith was again hospitalized at St. Joseph's Hospital from December 10, 1984 until January 14, 1985, for injuries connected with her January 1984 accident.

Prior to sustaining the injury in question, Smith had been employed by Mountain Bell and had suffered an injury to her back in March 1982. Smith was operated upon in March, 1982. Treatment of Smith's prior injury involved a lumbar laminectomy at two levels.

The trial court adopted findings of fact and conclusions of law which recited in part that Smith was required to communicate with attorneys as part of her duties as a risk management coordinator; Stephenson had received prior verbal permission from the city attorney to discuss City business with Smith; the City had a written policy recognizing business lunches as a proper forum for legal department employees to discuss matters affecting the City; the primary purpose of Smith's lunch with Stephenson was to discuss cases on which they had been working; and that seventy-five percent of the lunch meeting between Smith and Stephenson was devoted to the discussion of City business.

Smith's job responsibilities encompassed directing the Risk Management Division, evaluating, negotiating and securing insurance coverage for the City, and assisting in the handling of liability claims against the City. During lunch, Smith discussed both business and personal matters with Stephenson. Smith testified that she treated Stephenson to lunch because the attorney was leaving her job. According to Smith, she and Stephenson discussed City busi-

ness matters throughout most of their meeting; Smith had reviewed several of her office files preparatory to the luncheon meeting. She also testified that she had been working with Stephenson on several matters, including a water resource and treatment project and a number of claims that the City was attempting to collect. Stephenson confirmed that the central purpose of the lunch was to discuss matters on which they were jointly working.

Smith testified that it was not uncommon for her to attend business lunches on behalf of the City, but that not every lunch she had with a city attorney was a business lunch. Generally, the lunch period from 12:00 noon to 1:00 p.m. was excluded from Smith's normal work hours. The City, however, had adopted a written policy authorizing business lunches and providing that an employee could receive compensatory time for lunch periods involving the transaction of City business. Smith testified that she did not request compensatory time for the January luncheon meeting with Stephenson. The city attorney, Gary O'Dowd, testified that he had instructed Smith not to discuss problems involving City contracts or legal matters with city attorneys without first clearing the matters with him; however, he conceded that Stephenson had prior permission to discuss City business with Smith. Shortly after Smith's injuries and while she was recuperating, the City abolished the position held by her.

## 1. ISSUES ANSWERED SUMMARILY

■ (a) The trial court awarded Smith costs of transportation for plane fare in the sum of $613.50 from Hawaii to Albuquerque for trial. The City claims error in awarding costs. The evidence indicates that Smith's husband sought and later obtained employment in Hawaii and she moved there with him during the pendency of proceedings herein. We agree it was error to award air travel to plaintiff as a cost. Costs are recoverable only when they come within the ambit of a statute. *Swallows v. Laney*, 102 N.M. 81, 691 P.2d 874 (1984). As a general rule, a party is not entitled to per diem or mileage expenses for appearing as a witness in his own case. *Id.* NMSA 1978, Section 52–1–35(B) (Cum.Supp.1985) of the Workmen's Compensation Act, in effect at time of trial, expressly restricted any award of costs except in the case of a witness who testifies under subpoena. *See Sedillo v. Levi-Strauss Corp.,* 98 N.M. 52, 644 P.2d 1041 (Ct.App.1982); *see also Lujan v. Circle K Corp.,* 94 N.M. 719, 616 P.2d 432 (Ct.App. 1980).

■ (b) The trial court adopted a conclusion of law that Smith was "entitled to pre-judgment interest as provided by law." Our review of the judgment entered herein indicates that the language of the judgment failed to contain any provision providing for an award of prejudgment interest. In the absence of an express provision contained in the court's final judgment providing for an award of prejudgment interest, no such provision will be implied. Findings of fact or conclusions of law of the trial court contained in its decision and not carried forward in its judgment have no effect. *See Johnson v. C & H Construction Co.,* 78 N.M. 423, 432 P.2d 267 (Ct.App. 1967).

## 2. COMPENSABILITY OF INJURY

The City argues that the trial court erred in applying the law to undisputed facts in determining that the accident arose out of and occurred within the scope of employment. Because we do not consider the evidence undisputed and susceptible to only one logical inference, the issue is more appropriately whether the court's conclusion was supported by substantial evidence. *Cf. Trembath v. Riggs*, 100 N.M. 615, 673 P.2d 1348 (Ct.App.1983).

■ Lunchtime injuries may be compensable, provided the worker's accident

occurred in the course and scope of the worker's employment. *Hudson v. Thurston Motor Lines, Inc.,* 583 S.W.2d 597 (Tenn.1979). An injury occurs in the course of employment depending on the time, place and circumstances under which the accident happened. *See Velkovitz v. Penasco Independent School District,* 96 N.M. 577, 633 P.2d 685 (1981); *Sena v. Continental Casualty Co.,* 97 N.M. 753, 643 P.2d 622 (Ct.App.1982). Similarly, the injury must arise out of the employment. *Velkovitz v. Penasco Independent School District.* "Out of" refers to the cause or source of the accident. *Martinez v. Fidel,* 61 N.M. 6, 293 P.2d 654 (1956). The injury must have been caused by a risk to which the injured person was subjected in his employment. The fact that an employee is off the premises of the employer, and is engaged in an activity having a duality of purpose involving both business and personal matters, does not render the accident noncompensable. *Titus v. Fox Chemical Co.,* 254 N.W.2d 74 (Minn.1977); *Lauer v. Citizens Lumber & Supply Co.,* 170 Pa.Super. 352, 85 A.2d 609 (1952).

The general rule applicable to claims for workmen's compensation for injuries sustained off the premises of an employer during the lunch hour of an employee is discussed in 7 *Schneider's Workmen's Compensation,* § 1634 (1950):

> Ordinarily, where the lunch period is not subject to the employer's control or restricted in any way, and the employee is free to go where he will at that time, if he is injured on the public street, off the premises of the employer, the authorities hold that the injury does not arise out of the employment.

*See also Trembath v. Riggs; Berry v. School District of Omaha,* 154 Neb. 787, 49 N.W.2d 617 (1951); *J.R. Hess, Inc. v. Workmen's Compensation Appeal Bd.,* 17 Pa.Cmwlth. 87, 329 A.2d 923 (1975); *Hudson & Thurston Motor Lines, Inc.*

The "going and coming" rule generally precludes compensation for injuries in-

curred while on the way to assume duties of employment or after leaving such duties. *Mountain States Telephone & Telegraph Co. v. Montoya,* 91 N.M. 788, 581 P.2d 1283 (1978); *Beckham v. Estate of Brown,* 100 N.M. 1, 664 P.2d 1014 (Ct.App.1983). *See also* § 52–1–19 (Cum.Supp.1986).

■ Where, however, the employee is engaged in an off-premise activity during the lunch or meal period in furtherance of his employer's interests, and at the direction of or with the consent of his employer, an injury sustained by the employee may be compensable under the Workmen's Compensation Act. *See Tingey v. Industrial Accident Commission,* 22 Cal.2d 636, 140 P.2d 410 (1943); *Titus v. Fox Chemical Co.; Kahn Bros. Co. v. Industrial Comm'n,* 75 Utah 145, 283 P. 1054 (1929) (in bank) (sic); *see also* 1 A. Larson, *The Law of Workmen's Compensation,* §§ 20.-20, 21.23 (1985).

■ As observed in *Tingley v. Industrial Accident Comm'n,* an "injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do." *See also Sullivan v. Rainbo Baking Co.,* 71 N.M. 9, 375 P.2d 326 (1962). Similarly, as stated in *Hudson v. Thurston Motor Lines, Inc.,* 583 S.W.2d 597 (Tenn.1979), "Injuries that occur while an employee is furthering or facilitating his employer's business are incurred in the course of his employment." *See* 1 A. Larson, *The Law of Workmen's Compensation,* §§ 14, 15.50 (1985); *see also Edens v. New Mexico Health & Social Services Dep't,* 89 N.M. 60, 547 P.2d 65 (1976).

Here, the evidence indicated a sufficient nexus between Smith's employment and the injury. The trial court accordingly found that seventy-five percent of the lunch meeting between Smith and Stephenson was devoted to City business; that the primary purpose of Smith's luncheon was to discuss the case upon which they had

been working; that prior to the meeting, Stephenson had received verbal permission to discuss business matters with Smith; and that Smith's duties required her to communicate with attorneys in the legal department regarding matters of mutual concern.

The City contends that at the time of the accident, no substantive benefit incurred to the City from the business conference, that the employment did not contribute something to the hazard here involved, and that Smith did not have permission to discuss matters with Stephenson without first clearing the matter with the city attorney. This argument ignores the testimony of Stephenson that she had received permission to discuss City business with Smith and that the City had adopted a policy recognizing business lunches. ·On appeal, we view the evidence in a light most favorable to support the findings of the trial court, together with all inferences reasonably deducible from the evidence. *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978).

Plaintiff did not request a finding that O'Dowd had instructed Smith not to discuss certain problems with Stephenson. The trial court implicitly rejected a requested finding that Smith "was not authorized to conduct a business luncheon with Stephenson."

■ Smith ·held an administrative position which necessitated conferring with others concerning City business. Had Smith tripped, fallen and suffered an accident at her office while acting in the scope and course of her employment, the injury would have been compensable. The fact that the injury occurred in the building where the restaurant was located, away from the employer's premises, does not render the resulting disability noncompensable. *See Sullivan v. Rainbo Baking Co.* There is substantial evidence that the injury arose out of and within the course of Smith's employment and that it resulted from a risk incidental to the employment. The trial court's findings that Smith sustained a compensable injury are supported by substantial evidence.

### 3. TOTAL AND PARTIAL DISABILITY

The City asserts that the trial court erred in finding that Smith was temporarily, totally disabled from January 24, 1984, when she tripped and was injured, until September 1, 1984, and from December 10, 1984 to January 14, 1985. The trial court also found that Smith was "20% disabled from September 1, 1984 to December 10, 1984, and 20% disabled from January 14, 1985 through the present time." The City additionally asserts that because Smith's post-injury employment disqualifies her from receiving disability benefits, it was error to find that she was permanently, partially disabled from January 14, 1985 through the present time.

The testimony reflects that following her injury on January 24, 1984, Smith was hospitalized. She was discharged from the hospital in early February, and was released to return to work by her attending physician, Dr. Sonstein, on March 8, 1984. She accordingly sought and obtained several jobs subsequent to her employment with the City. In late March and early April of 1984, she worked as a finance director for Amethyst Hall treatment center in Santa Fe. She subsequently experienced severe emotional problems culminating in a suicide attempt in May, 1984. She was hospitalized for the emotional problems, treated, and released to return to work. In September 1984, she was employed by Cottonwood alcoholic clinic as a program coordinator. On December 10, 1984, she experienced a popping sensation in her back and severe pain while at work. She was again hospitalized for several weeks and she returned to work for Cottonwood in January 1985, and worked until April 30, 1985, when she moved to Hawaii with her husband. In July, 1985, Smith secured employment in

Hawaii as director of risk management for a hotel chain.

■ In *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980), the supreme court rejected the argument that a worker should be denied disability benefits because of a demonstrated ability to perform some post-injury employment. NMSA 1978, Sections 52–1–24 and –25 have been interpreted to embody a two-pronged test for determining disability. First, the worker must be totally or partially unable to perform the work he was doing at the time of the injury. Secondly, the worker must be wholly or partially unable to perform any work for which he is fitted and qualified. *Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 524 P.2d 1009 (Ct. App.1974).

■ A claimant may be able to perform some work and still be disabled. *Id.; Adams v. Loffland Brothers Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). Under this test, if the worker is unable to perform some of the work for which he is fitted, a finding of partial disability has been upheld. *Anaya; Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980). The evidence indicates that Smith was unable to continue working at Amethyst Hall in Santa Fe or at Cottonwood in Los Lunas because of residual problems attributed to her January, 1984 injury.

Dr. Sonstein, a neurosurgeon, testified that even though he felt Smith could attempt to work as of March 8, 1984, that she would be the best judge of her ability to return to work and perform the usual functions. Dr. Sonstein also testified that he examined Smith in March 1985, and that she had persistent back and left leg pain and some weakness and numbness in her left leg. He testified that this pain and numbness interferred with Smith's normal physical activity. He determined during that examination that she had a twenty-eight percent impairment to her body as a whole. Additionally, Dr. Sonstein testified Smith had restrictions placed on her physical activities, including limiting lifting weights to twenty to twenty-five pounds, limited bending, stooping or squatting, avoiding prolonged sitting, no climbing and limiting her activities to sendentary work.

Dr. Barry Maron, an orthopedic surgeon, testified that Smith's accident at the restaurant, within a reasonable medical probability, necessitated the back operation on January 31, 1984, contributed to her hospitalization in December, 1984, and the injuries sustained were a cause of her continued disability. Dr. Maron also testified that Smith had a medical impairment rating of twenty-two to twenty-four percent of the body as a whole. Further, he advised Smith that due to her weakened back condition and persistent pain, she might need a spinal fusion in the future.

Dr. William Foote, a clinical psychologist and vocational specialist, treated Smith at the request of Dr. Maron. Dr. Foote testified that he clinically tested Smith and that her brief employment with Amethyst Hall in March, 1984, was a failed attempt to return to work. Dr. Foote testified that as a reasonable psychological probability, the chronic pain Smith suffered following her January, 1984 accident contributed to her emotional vulnerability and emotional breakdown. He testified that she was 100 percent disabled from the time of her injury in January, 1984 to September 1, 1984, which precluded her from working during this period. Dr. Foote also testified that in his opinion, considering Smith's physical and emotional problems stemming from her January accident, she currently had a twenty to thirty-five percent vocational disability rating.

■ Once the causal connection between a workman's injury and disability has been established by expert medical testimony, the extent of plaintiff's disability may be established by non-medical witnesses. *Garcia v. Genuine Parts Co.*, 90 N.M.

124, 560 P.2d 545 (Ct.App.1977). *See also Lucero v. Los Alamos Constructors, Inc.*, 79 N.M. 789, 450 P.2d 198 (Ct.App.1969). Plaintiff may offer evidence concerning the extent of the disability by his own testimony. *Garcia v. Genuine Parts Co.* Drs. Maron, Sonstein, and Foote testified that the extent of Smith's impairment was causally increased as a result of the January 24, 1984 injury.

Smith testified that she has daily pain and discomfort; at times the pain is severe; at times the pain interferes with her ability to concentrate; she has difficulty bending, lifting or sitting for extended periods of time; and she experienced a decrease in her ability to perform job functions.

■ Determination of the degree of disability in a workman's compensation action is a factual issue to be determined by the trial court. *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App. 1981). Absent misapplication of the law or a lack of substantial evidence, an appellate court will not substitute its judgment for that of the district court. *Id.* *See also Schober v. Mountain Bell Telephone; Trujillo v. Tanuz*, 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973). The degree of disability is a question of fact for the trial court. The trial court may determine the percentage of disability based upon both medical and lay testimony. *Chapman v. Jesco, Inc.*, 98 N.M. 707, 652 P.2d 257 (Ct.App. 1982); *Romo v. Raton Coca Cola Co.*, 96 N.M. 765, 635 P.2d 320 (Ct.App.1981). The trial court's finding of temporary total disability and permanent partial disability is supported by substantial evidence.

## 4. REDUCTION OF BENEFITS

The City contends that if the trial court's findings that Smith was permanently partially disabled are affirmed on appeal, then the City is entitled to a reduction of benefits due to payments previously made to Smith by Mountain Bell for a prior disability. The City asserts that under NMSA

1978, Section 52–1–47(D), Smith is precluded from receiving workmen's compensation benefits for duplicate disabilities. Specifically, the City contends the disability benefits awarded to Smith by the court should be reduced by the compensation benefits paid on account of her prior injury to her back while employed by Mountain Bell. *Id.*

At the time of her injury in January 1984, Smith was receiving workmen's compensation benefits from Mountain Bell for an injury to her back. Smith testified that as a result of this work-related disability, she was awarded a five percent permanent partial disability from the Colorado Industrial Commission. Smith acknowledged receiving approximately $364 per month as payment on this award through April, 1984.

In *Gurule v. Albuquerque-Bernalillo County Economic Opportunity Bd.*, 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972), this court considered a claim similar to that advocated by appellants. In *Gurule*, a truck driver had injured his back in 1961, and underwent three separate operations involving laminectomies and spinal fusions. The court held: "Although the subsequent injury in this case was to the same member or function, this does not automatically require a reduction of benefits payable for the subsequent injury. * * * " *Id.* at 203, 500 P.2d at 1326.

The compensation benefits paid to Smith for the injury she sustained while employed by Mountain Bell did not entirely duplicate the benefits she received from the City. Smith had recovered from her prior injury to the extent that she was able to work again, despite continued discomfort.

■ Both *Gurule* and a subsequent case, *Smith v. Trailways Bus System*, hold, however, that the Section 52–1–47(D) reduction applies when there is an overlap in compensation benefits resulting from two injuries to the same member or function or different parts of the same member or function, and if the compensation benefits would, in whole or in part, duplicate

benefits paid or payable as a result of the prior injury. *Id. See also* § 52–1–47. The reduction applies notwithstanding the fact that the worker has recovered from the prior injuries and there is no offset for the total amount paid on the first injury. Here, as shown by the record, a payment overlap occurred for the period of January, February, March, and a portion of April, 1984.

In the instant case, it was error to deny the City's claim for reduction of workman's compensation benefits to the extent the City did not receive credit for that portion of the award involving overlapping compensation payments resulting from the prior award by the Colorado Industrial Commission for a partial disability involving the same part of the body. The case must be remanded for a calculation of the appropriate reduction. *See Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 689 P.2d 289 (Ct.App.1984).

## 5. WORK–RELATED INJURY

The City asserts that causation between the January 1984 accident and Smith's resulting disability was not supported by expert medical testimony.

A worker is entitled to compensation where an injury was incurred and disability resulted therefrom, even though the worker was suffering from a pre-existing injury, without which there would not have been a disability. *Reynolds v. Ruidoso Racing Ass'n*, 69 N.M. 248, 365 P.2d 671 (1961). *See also Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978). The question of whether a workman's continued employment resulted in aggravation of a prior injury, is one of fact generally to be determined by expert medical witnesses. *Pena v. New Mexico Highway Dept.*, 100 N.M. 408, 671 P.2d 656 (Ct.App.1983).

The expert medical testimony of Dr. Maron and Dr. Sonstein constituted substantial evidence to support the trial court's finding that Smith suffered a work-related injury and disability. Similarly, Dr. Foote, a clinical psychologist, testified that Smith had sustained a fifteen to twenty percent disability as a result of her accident "related to the physical aspects of her injury and the pain embodied therein, and 5 to 10 [percent] additional disability based upon the emotional vulnerabilities caused by this accident." Dr. Foote also testified that plaintiff had chronic pain problems that reduced her capacity for coping with stress.

The trial court's findings of plaintiff's disability is supported by substantial evidence.

The judgment of the trial court is affirmed except for those portions of the award which allowed plaintiff travel costs and which involved overlapping compensation benefits from an award of compensation under Colorado law and benefits arising from the present claim. As to those issues, the matter is remanded for entry of an amended judgment consistent with this opinion.

Plaintiff is awarded $2,000 for services of her attorney on appeal.

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.